UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MEDLINE INDUSTRIES, INC., an Illinois corporation, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | NO. |
| ACELL, INC., a Delaware corporation, | ) ) ) ) | |
| Defendant. | ) | |

## COMPLAINT

### Nature of the Action – Breach of Contract

1. This action is brought by Medline Industries, Inc. ("Medline") against ACell, Inc. for a money judgment on account of ACell's breach of a written exclusive distribution agreement.

### THE PARTIES

2. Medline is an Illinois corporation whose corporate headquarters and principal place of business is located at 1 Medline Place, Mundelein, Illinois. Medline is in the business of supplying medical products to hospitals and others.

3. ACell is a Delaware corporation whose principal place of business is located at 8671 Robert Fulton Drive, Suite B, Columbia, Maryland. ACell is in the business of manufacturing and selling Urinary Bladder Matrix biomaterials-based tissue-regenerating products ("Devices").

## JURISDICTION AND VENUE

4. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. There is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391. The Court has personal jurisdiction over ACell pursuant to its agreement with Medline that personal jurisdiction over it is proper in Illinois and the promises ACell made to Medline in the Agreement that are connected with Illinois, all of which subject ACell to personal jurisdiction in Illinois pursuant to 735 ILCS 5/2-209 (7).

## BREACH OF CONTRACT

6. On September 17, 2008, for good and valuable consideration, Medline and ACell entered into an Agreement for the distribution of the Devices. That Agreement grants Medline the exclusive right to sell, distribute and promote the Devices in North America (the Territory) in the "Field" which is defined as follows:

> "Field" for the purposes of this Agreement means wound care applications involving use of the Devices to treat injuries on the external portions of the human body such as diabetic ulcers, pressure ulcers, venous statis ulcers, burns or other injuries to the skin. The foregoing notwithstanding, the Field does not include trauma, general surgical, plastic and/or reconstructive surgery applications, applications internal to the body wall, applications to injuries that include damage to bones, tendons, ligaments or joints, or other applications that do not fit the description for the Field set forth in the preceding sentence.

Exhibit A, p. 14. The Agreement requires ACell to sell Devices exclusively to Medline, and no other entity, for Medline's resale in the Territory in the "Field." Exhibit A, ¶ 1(c).

7. ACell breached the Agreement by selling, distributing and/or promoting Devices directly to customers in the Field, at times by expressly offering customers in the Field ACell

products as express alternatives to Devices Medline sells and promotes in the Field. These breaches by ACell include, but are not limited to the following:

    a. ACell sold and promoted its item WS0307-5, a 3cm x 7cm sheet, to Denver VA as the same or equivalent to the Device sold to Denver VA in the Field by Medline as its MSC1813EP, 3 x 7 sheet. As a result, Denver VA began ordering all of its ACell products directly from ACell, including Devices that it used in its wound care clinic and which Denver VA had previously purchased from Medline.

    b. ACell solicited and promoted its sales of Devices in the Field in North America from a company known as HCA Healthcare.

    c. ACell sold and promoted Devices in the Field in North America, through providing free samples of wound care sheets and otherwise, to Bethesda Naval Hospital in Bethesda, Maryland, to Skyridge Medical Center, to Methodist Hospital in Evansville, Indiana, and to Conroe Regional Center in Conroe, Texas.

8. On information and belief, ACell has sold or promoted Devices to other entities in North America in the Field. Despite repeated demands, ACell has failed and refused to cease these ongoing breaches of the Agreement.

9. The aforesaid activity by ACell, conducted in breach of the Agreement, has caused Medline injury, including lost sales and consequential damages, in an amount in excess of $75,000.

10. Medline has fully performed its obligations under the Agreement.

WHEREFORE, Medline Industries, Inc. prays that this Court enter judgment in its favor and against ACell, Inc. for all damages that Medline has sustained as a result of ACell's breach of the Agreement, in a sum in excess of $75,000, plus such other relief that the Court deems appropriate.

                                                Respectfully submitted,

                                                /s/ James J. Stamos
                                                One of the attorneys for Medline Industries, Inc.

James J. Stamos (ARDC 03128244)
John J. Kakacek (ARDC 06187663)
STAMOS & TRUCCO LLP
One East Wacker Drive, Third Floor
Chicago, IL 60601
Telephone: (312) 630-7979
Facsimile: (312) 630-1183